Jim Edward BLACKWOOD *v.* Casey Lynn FLOYD

00-197                                    29 S.W.3d 694

Supreme Court of Arkansas
Opinion delivered November 2, 2000

*Gregg E. Parrish*, for appellant.

*Pike & Bliss, P.A.*, by: *George E. Pike, Jr.*, and *Deborah Pike Bliss*, for appellee.

TOM GLAZE, Justice. This appeal evolves from a divorce decree awarded to appellee, Casey Floyd, against appellant, Jim Blackwood, on July 23, 1998. Blackwood's son from a previous marriage, Jim-Jim, had lived with Floyd and Blackwood during their three-and-a-half-year marriage. The parties' divorce decree, entered September 8, 1998, made no mention of Jim-Jim, and stated that there were no children born of the marriage. Apparently, because Floyd had established a maternal relationship with Jim-Jim, Floyd and Blackwood had entered into a private agreement, allowing Floyd to visit the child upon request. When differences arose between the parties after the divorce, Blackwood declined to allow Jim-Jim to visit Floyd. Thereafter, Floyd filed a petition in chancery court on December 22, 1998, requesting that, because Blackwood refused Floyd's requests to visit Jim-Jim, such a change in material circumstances warranted that Floyd be granted visitation with her former stepson.

Blackwood moved to dismiss Floyd's motion, contending that ninety days had passed since the parties' divorce decree was entered and, under Rule 60(b) of the Arkansas Rules of Civil Procedure, Floyd was barred from seeking visitation rights or any other modification of the divorce decree. Additionally, Blackwood argued that, because Floyd had not sought visitation during the parties' divorce,

she was also precluded by *res judicata* from seeking such relief. Floyd's response to the motion to dismiss countered that these rules did not apply because chancery courts have continuing jurisdiction in child custody and visitation cases.

On February 24, 1999, the chancery court denied Blackwood's motion to dismiss, and stated that it was treating Floyd's petition for visitation as a motion to modify the parties' divorce decree. The court ruled that *res judicata* did not apply and stated that it had "continuing jurisdiction to decide matters involving child custody and visitation, the paramount consideration being the welfare and best interests of the child."

Subsequently, the chancellor held a hearing wherein the parties presented evidence on the visitation issue and Jim-Jim's best interests. At the hearing's end, the chancellor ruled that Floyd had established that she was a stepparent who stood *in loco parentis* to a child of whom the court had not been aware at the time of the divorce, and that the court was not required to find a change of circumstances before modifying the divorce decree. By his order entered July 19, 1999, the chancellor granted Floyd's request for reasonable visitation, from which Blackwood filed this appeal.

Blackwood first argues that the provisions of Ark. R. Civ. P. 60 barred the chancery court from modifying its order. Although it has since been amended by *In Re Arkansas Rules of Civil Procedure*, 340 Ark. Appx. (January 27, 2000), Rule 60 as it stood at the time Blackwood filed his motion provided in relevant part as follows:

> (b) Ninety-Day Limitation. To correct any error or mistake or to prevent the miscarriage of justice, a decree or order of a circuit, chancery or probate court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

Ark. R. Civ. P. 60(b)(1999). No one disputes the fact that the chancellor entered his order which modified the original divorce decree 314 days after the decree was entered. The chancellor simply held that he had continuing jurisdiction over any visitation issue because the issue involved the welfare and best interests of the child.

■ The only exceptions to the ninety-day limit in Rule 60(b) are set out in provisions (a) and (c) of Rule 60. Provision (a) provides that, after the ninety-day deadline, a court only has jurisdiction to correct clerical errors and provision (c) enumerates seven, different grounds by which a court may set aside or modify a judgment. Ark. R. Civ. P. 60(a) and (c)(1999). After ninety days, without the showing of one of the foregoing exceptions, a court has no power to modify or set aside an order. *See West v. Belin*, 314 Ark. 40, 858 S.W.2d 97 (1993); *Hayden v. Hayden*, 291 Ark. 582, 726 S.W.2d 287 (1987). Floyd does not raise or argue any of these exceptions.

■■ Instead, Floyd makes the assertion that Rule 60 does not apply in child custody or visitation cases. She cites the cases of *Office of Child Support Enforcement v. Ragland*, 330 Ark. 280, 954 S.W.2d 218 (1997), and *Campbell v. Richardson*, 250 Ark. 1130, 468 S.W.2d 248 (1971). In doing so, she argues that once a court takes jurisdiction over child custody, support, or visitation issues, the court has continuing jurisdiction to modify orders affecting the best interests or welfare of the child. The cases Floyd relies on actually stand for the settled rule that, while there is continuing authority in the court granting a decree of divorce to revise or alter orders contained in such decree affecting the custody and control of the minor children of the parties, *such orders cannot be changed without proof showing a change in circumstances from those existing at the time of the original order. See also Myers v. Myers*, 207 Ark. 169, 179 S.W.2d 868 (1944). While Floyd asserts that she had a private agreement with Blackwood to visit Jim-Jim after the divorce, she made no contention at the time of the parties' divorce that she stood *in loco parentis* to her stepson, nor did she request the chancellor to award her visitation with her stepson. As a consequence, the chancellor never exercised jurisdiction over Jim-Jim because visitation was never an issue.

■ In short, in the cases cited by Floyd, the courts heard evidence and granted or denied custody or visitation at the time of divorce. Here, at the time of the original divorce proceeding, Floyd had every opportunity to prove that she had established an *in loco parentis* relationship with Jim-Jim and, as a result, might have established that visitation was in the best interests of the child. However, Floyd failed to do so, and when Floyd ended her marital relationship with Blackwood, her legal status as a stepparent also ended.

Any private agreement Floyd may have had with Blackwood had no legal effect. In this connection, it is also significant that Floyd did not offer any argument asserting that extrinsic fraud had been utilized in obtaining the parties' decree. *See* Ark. R. Civ. P. 60(c)(4) (1999).

■ Also, contrary to Floyd's arguments, this court applies Rule 60(b) to child custody cases. *See Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997). In *Slaton*, the parties were divorced on September 26, 1991, and Mr. Slaton was awarded custody of the children. The chancery court entered an order modifying custody on March 5, 1992. This court held that the chancery court did not have jurisdiction to modify or set aside its order beyond the ninety-day limitation set out in Rule 60(b) because none of the conditions listed in Rule 60(c) existed.[1]

■ As in the *Slaton case*, there is nothing in the record here to suggest that the ninety-day limitation in Rule 60 should not apply or that any of the exceptions under Rule 60(c) applied. Thus, the chancery court did not have jurisdiction to modify its divorce decree to add a visitation provision after ninety days elapsed after Blackwood's and Floyd's divorce decree was entered on September 8, 1998.

■ In conclusion, we address that part of Floyd's argument that her close stepparent relationship with Jim-Jim was unknown to the chancellor at the time of the parties' divorce, and that this relationship was a material circumstance to warrant extending her visitation. Floyd cites a string of cases in which a stepparent was granted visitation rights or custody of a stepchild. *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998); *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997); *Riddle v. Riddle*, 28 Ark. App. 244, 775 S.W.2d 513 (1989); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988). These cases, however, are not controlling of the situation before us. In those cases, the stepparents asserted their visitation or custody rights, the courts heard evidence, and they granted or denied the right to custody or visitation at the time of the divorce. As discussed thoroughly above, Floyd simply decided

---

[1] This court addressed other procedural issues in *Slaton*, including consideration of a motion for new trial pursuant to Ark. R. Civ. P. 59, and claims of waiver, estoppel, and *res judicata*. However, the court rejected the trial court's express reliance on Rule 60(b) in stating that the lower court had no jurisdiction to modify the child custody order. *Id.*

not to assert any right to visitation with Jim-Jim at the time of the divorce, and when she finally did, it was too late.

Because the chancery court's order modifying the divorce decree is void for lack of jurisdiction, we need not address Blackwood's other arguments for reversal.

Reversed and remanded with instructions to dismiss the July 19, 1999, order.